Okay, Mr. Landry, we'll hear from you. Thank you, sir. Robert Landry from Plaintiff Fair Borcik with my co-counsel, Mr. Rubarino, at council table. Your Honors, this is about a case that if this jury instruction stands that was given to the jury in this case, it will mean that the Louisiana Environmental Whistleblower Act is gutted. For practical purposes, it will not exist anymore. And why is that? What the jury was instructed in this case was that good faith meant that the plaintiff had an honest belief that an environmental violation occurred and that he did not report it either to seek an unfair advantage or to try to harm his employer or another employee. A good faith belief must also be objectively reasonable. We don't have an issue with objectively reasonable. I mean, what instruction? You said that your objection was that it did not comply with Overton. Yes, sir. And Overton, the best you can get out of Overton is an absence of malice and the absence of a design to defraud or to seek unconscionable advantage. And there is, you know, there's no absence of malice here with respect to that supervisor. I mean, according to what your arguments are, I mean, that was a motive, at least the jury I guess found it was a motive, and there's no absence of malice here. And so the instruction you asked for, that is one that conformed with Overton, would not have saved you at all. Oh, I think it would have, Your Honor, because Overton, honest belief and unfair advantage. No, it says an absence of malice. Yes. And how would you have argued when an honest belief, okay, you had an honest belief, agree with that, the absence of malice, and here they proved, to the satisfaction of the jury, that your client had malice toward this supervisor. And so there was no absence of malice, and consequently, there was no good faith for the purposes of this statute. Well, if you look at the law, malice is found where there is an absence of caution and inquiry and knowledge of falsity or reckless disregard. Malice has falsehood in it. Is that your position? Yes. Yes, Your Honor. And so, ill will is not the sum total of malice, is that your position? So, being if ill will is not enough for malice under Louisiana law, is that? No, Your Honor, ill will is not enough for, ill will is not enough. What case says that? What case says that? I believe we cited cases in our brief, one of which was Rooley, which was J.P. Rooley versus NSEARCH, which was a defamation case that talked about malice and what malice is and isn't. Okay, so if he had a good faith belief that the law was violated, and he hates everyone that he works with and wants to bring the company down because he hates working there, so he reports it both because he believes there's been a violation, but also because he wants to bring the whole company down, including every coworker. He wants them to all be unemployed and have bad lives. Does he violate, is he still within good faith? I think good faith is an honest belief, and if we ask a jury to get into the intention of the individual making a whistleblowing claim, you will not have any whistleblowers because... But do you have Louisiana authority for that? I agree that under Texas law, they have a pattern jury charge that says it's exactly what you just said, but I don't, we just had a whole argument that Louisiana is a unique place. Yes. So is Louisiana unique in this area? I wish there were more cases on good faith, but what we have is the Cherami case, which is the only Louisiana Supreme Court case to deal with this environmental whistleblower statute. And Cherami is very clear that when the court is interpreting that environmental whistleblower statute, it has to be done in a way that gives effect to the act. Why is that, Cherami says? Well, there's a constitutional mandate in Louisiana, Article 9, Section 1, says that the environment will be protected and that the legislature will enact laws to protect the environment. So what did the legislature do, according to Cherami? It enacted the Environmental Protection Act, the Louisiana Environmental Quality Act, which is a comprehensive set of laws that govern things having to do with the environment, one portion of which is the Louisiana Environmental Whistleblower Act. That's 30-2027. So that's one part of a comprehensive scheme. And in the Cherami case, I believe it involved somebody who saw a pelican nesting or something of this sort being run over. And in the court, the company's claim was, well, this isn't the environment, you know, these are birds. And the court said no. Given the constitutional mandate, given this legislative scheme, we have to apply this the Act to protecting whistleblowers. There's a Third Circuit case that we cite also that says specifically that this whistleblower protection is designed to implement the Act. So, Your Honors, I would say that if we have cases where Case A, Person A, doesn't like the company, hates the company, and makes a report, but has a good faith belief that it happened, and it's objectively reasonable to say that it happened, but he doesn't like the company and reports, Person B makes the same report, and Person B gets protection and recovers, and Person A does not, at least to observe consequences. And that's what we're going to have. We would be handing the company polluters an interpretation of the statute that protects not the whistleblower in the environment, it protects the company. But that's what the statute said. Doesn't the statute require good faith? It certainly does require good faith. And good faith is defined as the absence of malice. Whatever malice may mean, but you've got to combine that. You can't read out of the statute. It means to fulfill your public duty. That's your purpose, in good faith. Rare, unusual, but this is over to you. Yes. And, Your Honor, but in this case, the jury was instructed that it could mean that the whistleblower was trying to harm his employer or another employee. That's what was argued to the jury, that he didn't like his bosses. He didn't like one boss in particular. But your objection to the instruction was only, as I remember, that it does not comply with Overton. Is that correct? I cited Overton as a case that it did not comply with. I also cited some Fifth Circuit jury. But that's essentially what you said. Yes, sir. I thought you said it doesn't have any intent to seek an unfair advantage or harm another. That you went, that you said, that it sought, when it describes, it mistakes the case law when it describes good faith as meaning the plaintiff had no intent to seek an unfair advantage or harm another. Yes. So. Well. Isn't that right? Yes. If that's what we asserted, that's what we asserted. I'm reading from your objection itself from the district courts. You said simply harming another party is not what the case law says, defrauding is not even close to the same thing as harming. That's correct. And yes, I mean, to harm is not to defraud, which is what Overton talked about. Anytime a whistleblower reports a violation of environmental laws, there's potential harm to the employer because there's a potential for consequences and responsibility. It makes sense is what they're saying is that you can't, you can't go out there just for the purpose. You can have an honest belief that I know that it's there and I know it's a violation of the law. But the only reason I'm going to file a complaint is because I'm mad at my supervisor, I'm mad at my employer, and I want to bring him down. And that, I don't know why that's in the law, but it could be. It came out of the legislature and somebody in the legislature could have gotten up and said, look, what they will do is use this environmental law to bring down their employee every time they can. They said, well, let's put this little phrase in there. It has to be in good faith and it can't be meant to, uh, to, uh, to, uh, apply to those that are brought in bad faith. And then we'll say, what is good faith? Well, good faith is absence of malice. And there you are. I mean, it's, it's, you know, it's like sausage being made in the legislature. I mean, it comes out not quite as pure as you might want it to. I understand that, Your Honor, but what the jury was charged with in this case went far beyond that. It talked about an employee who might want to harm the employer or try to harm the employer or another employee. So you're saying harm doesn't belong there? I'm trying to figure out what you believe the actual legal definition is. I would, I, I, I would say it's an unfair, it's a, uh, it would be an honest belief and not seeking an unfair advantage, which ties back into definitions of fraud and so forth. But to say... What does unfair advantage mean? In other words, an unfair advantage also could mean that what, I'm using the environmental law to bring my employer down. I'm using the environmental law to create an unfair advantage, uh, in my, an advantage in my favor that is unfair to my employer. I mean, it's... Well, unfair advantage, it's actually, and we cited in the brief, uh, is in the civil code, in the civil code article about fraud, which I think is 1953, I could be wrong about that. But, and it talks about fraud being a misrepresentation or suppression of the truth to seek an unjust advantage or to cause a loss or inconvenience. So, I mean, we're getting back into an employee, if he honestly, subjectively believes it, he's not committing fraud, essentially, while he's doing it, that is much different from intent to harm the company. There's always a possibility that the company will be harmed if he makes his... Now, let me ask you this question. Yes. This is a Louisiana case, and I suppose it's, uh, diversity. Yes, Your Honor. Diversity jurisdiction. And so, we would be called on to make an eerie guess if we expand on anything other than is in Overton. Yes. Uh, and, um, where are we going to, where are we going to educate ourselves or enlighten ourselves, uh, so as to make an educated guess? Yes. Well, I think you look to Sherman and what it provides, and I think you look to Overton and what it provides. Well, and what do we come up with? And you come up with an honest belief, an unfair advantage, and, but you do not come up with expanding, uh, what the plaintiff has to disprove, that he did not intend to harm himself or another employee. That is in no Louisiana case. Well, what is good faith? Or, you know, in other words, good faith is, anybody who has an honest belief, or as Judge Riva said, any public-minded citizen who acts on an honest belief is, acts in good faith irrespective of what his personal motives may be to his company or anybody else. Is that what you would say? I would say that it's, it's an honest belief and not, not accompanied by trying to seek an unfair advantage. I think it's a subjective, honest belief and not trying to seek an unfair advantage. And, but I think in terms of trying to, to harm a fellow employee or the company, it's in no case law. None. And if we're making an eerie guess, we, we have to look to Louisiana Supreme Court first and how it has interpreted this statute in a way to try to give maximum effect of the statute. Well, should we, can we certify this to Louisiana Supreme Court? You could. Yes, Your Honor. You could do that. To ask them what good faith means in the context of this law? Is that what? Um, I'm, you know, back to Texas Pattern Jury, it defines good faith as Paul Payne believed the conduct reported was a violation of law and his belief was reasonable in light of his training and experience. So it just has to do with whether the, whether his belief is reasonable and it's, and it's actually true that he believes it. It's, so it's an honesty and a reasonableness and that's what good faith is under the whistleblowing statutes for all the environmental for Texas. I'm trying to figure out if Mississippi is a different animal and I'm still not sure. I don't know about Mississippi. I know there is a, I mean, I'm, I'm sorry, I'm sorry, Louisiana. I meant to say Louisiana. I apologize. Yeah, yeah. I, but I, I, we do cite a Texas case in here that basically tracks that in our reply brief. It's a Texas Supreme Court case where there's a subjective element of the good faith where that's an honest belief essentially and then it's, it has to be reasonable. I mean, I can, I can say, hey, you know, I think they're killing sea turtles over here, but if the company isn't, has nothing to do with the sea, that's not going to be objectively reasonable. Here, the jury found the belief to be objectively reasonable. When they got to the good faith part of the interrogatory, that's where the wheels came off. So we know this had an impact on the case. We know it was this jury instruction and, you know, your honors, we, we, we, we, we just cannot have a jury instruction or the law be that to harm his employer or another to this because it's always possible that the company can be harmed if a report is made. Well, there's often, that's why people, they're, they're mad and this is what makes them make these claims to begin with and that doesn't make them any less valuable claims. We want them to make the claims. We don't want them to, to, to make it up. That's for a jury to find. See my time is up, your honor. Okay. Thank you very much, Mr. Landry. Mr. Clements. Good morning, Miles Clements appearing on behalf of the appellee Crosby, Tuggs LLC. Your honors, with all due respect to my opponent, I, I view their entire appeal as a smokescreen based on cases with, with strikingly different facts than we have here. This was a case about, about good faith, but it is brought by a man, Mr. Borsig, who by his own testimony said that he systematically and methodically polluted the environment for three years without witnesses, but it's what he said and it was uncontradicted. He took five gallon buckets of oil and dumped it overboard while the vessel was underway. It always struck me as a difficult case for this man to carry his burden of proving that he was in good faith when the, when he purported to be the whistleblower of his. I have an honest belief that he, that reporting it was an honest belief that this is violation of law and that I did it, but I have an honest belief that it was violation of law. I think he, uh, assuming, assuming he did it, what was the evidence that, uh, that he had some sort of antipathy against his supervisor? Um, he, um, he, his relationship with his captain, uh, was declining. He complained that the captain used his cell phone in the wheelhouse. He complained, uh, to others that, uh, the, the captain, uh, looked at his laptop in the wheelhouse, uh, and he was not getting the, uh, the instruction as a designated examiner. The captain was a designated examiner and he was not going to advance and he resented the captain because of that. He ultimately went to the HR manager and complained about the man using his cell phone and looking at the laptop and he made this vague complaint, uh, that, that he had been dumping. And, uh, when the, uh, after, and, and the HR, uh, manager said, well, we'll investigate that. Uh, these are safety concerns and we'll turn it over to the safety department and we'll give you a transfer. Mr. Borsig admitted that all he wanted here was a transfer. He wanted to go to a better position, someone else's position in the company on a, on a better vessel, so he thought, and that was the unfair advantage that he sought. I don't want to digress, I want to stay focused. Unfair advantage. Excuse me? Why is that an unfair advantage? Because he is taking someone else's position. If he wanted, uh, if there had been a position for him, um, he, he could have, uh, he would have transferred in the normal course of things. You're saying he's using, he's using the environmental law as leverage. Yes, exactly. To his advantage. Yes. That's unfair advantage. Yes. Well, it's unfair if it involves fraud or deceit, but if it's just, I'm going to use something in the facts to help me, that's not unfair. It has to be, it has to involve fraud or deceit to be an unfair advantage under the definitions. Okay. The evidence in the case was that nobody else was instructed to dump oil overboard. The evidence in the case was that this captain and all the other captains said, if I ordered anyone to do that, I would lose my license, I would pay a fine, I would go to jail, I would lose my livelihood. Why would I do that? We pay a contractor to meet us at the dock periodically every month and, and empty this waste oil tank. So the evidence in the case was, it was to no captain's advantage to give this order. The testimony from all of the other crewmen on these boats was, I never got that order and I never did it. Now there was a, uh, factually, uh, there was much to do about the practice of periodically draining oil, excuse me, draining water, not dumping oil, but draining water from the bottom, um, of, of, of the, uh, of the tank. It seems like we're getting far afield in the facts of the case when it's, we're just trying to figure out what the Louisiana law requires for the definition. Okay. The, the only real authority I think we have to look at there is the decision of Judge Kern Reese in a bench trial in the civil district court for the parish of Orleans in the Overton case in which Judge Reese, I imagine he considered that there wasn't a lot of jurisprudential precedent, uh, for the definition of good faith. He looked at the, the dictionaries, he talked about the different things Judge Jolly, uh, hit on several, uh, and then he looked at what happened in Overton where a report was falsified, where Mr. Overton made a report to protect the environment and resisted doing the things that he was reporting, uh, and, um, and in that case, Judge Reese said that under these facts, what this man did was in good faith. It's hard to ignore, it's hard to look at the definition as framed by Kern Reese and by Judge Fallon in this case without considering the facts of the case. So you believe the definition of good faith varies as a, based upon what the evidence in the case is? Well. Is that what you're saying? I'm saying, I, I think Judge Reese, I think Overton is a pretty good case for us. I think Judge Reese was correct. So are you saying that's the definition that should be used is what Judge Reese used in Overton? Well, I don't think you really, I don't think you made a narrow definition. Well, an absence of any intention to seek an unfair advantage or to defraud another party, an honest and sincere intention to fill one's obligations. He's defining it from the dictionary. He says it was an intangible and abstract quality with no technical meaning or statutory definition, uh, the absence of malice, the absence of design to defraud or seek, um, an actual advantage. So what does Overton tell us should be the definition? I'm sorry, Your Honor. So what does Overton tell us should be in the definition of good faith in the case? That that is the criteria that should be considered and narrowed down. In our particular case, uh, the definition was disjunctive, um, uh, the complaint can't be seek, can't be made to seek an unfair advantage, um, or to cause harm. Where is harm? Harm is not in any of this definition, but in the whole paragraph of the Overton case. Where does the word harm come in? That's what's being challenged. And I don't see that anywhere in that whole paragraph in Overton, which you said is the I think the good faith, the good faith whistleblower can't be motivated purely to, um, to defraud or to, uh, inflict harm. Well, defraud and inflict harm are two different things, aren't they? I mean, you can, you can harm someone through defrauding them, but harm in the abstract is broader than defraud. Harm doesn't necessarily require any deceit. Um, you know, Your Honor may have a point there. If that had been the word. Harm can't be inflicted with good faith, though, I think. Why not? It just has to, under Texas law, it just has to be a violation of the law and it has to be reasonable. Why isn't that a better definition of good faith? That's not what the legislature. Well that's what I'm asking. What did the legislature of Louisiana tell us to be helpful? Did they tell us the word harm? What did they tell us to be helpful? Well, they, they, they didn't really tell us. They did make a good faith requirement, and I'll also point out it's sheer speculation that the jury even considered that, that particular prong of the two-prong disjunctive requirement that is seeking an unfair advantage or causing harm, and if we consider, as we must, viewing the evidence in the light most favorable to protecting the verdict, since it is the jury's province to consider all of the evidence, the jury very, very well might have simply come to the conclusion that this man was, was seeking the unfair advantage he testified for the most part he was, he was seeking and, and never got to the cause of harm. There was no objection by the plaintiff in this case to the part of the instruction with respect to obtaining an unfair advantage, and that instruction is all part of one sentence, and it's disjunctive. Well, but if you, if you can't tell whether they used the improper part or the proper part, and it was objected to, then why isn't that reversible error? It's not. Assuming argue, assuming arguendo that they did properly preserve an objection to harm, it's written in a way that you can't tell, and, and also assume arguendo that harm is wrong, um, then, and you can't tell whether they did harm or something else, then why isn't that reversible error under our case law? I'm sorry, Your Honor, because under the jurisprudence, I believe we're obligated to, to give deference to the jury and to view their, the result in the light most favorable to protecting the verdict. What case says that where a jury instruction has error in it, um, you have to assume that they didn't use the error part, they could have used the correct part? I'm not, I'm not familiar with such a case. There are a lot of cases that say that. No, they say, no, they say, not, not in a, um, not in one that has the same definition within the, if they have a different reason altogether, but if they're wrapped up together, if they're, it's intertwined, what case says that, that that is, and if you don't have it right now, I don't want to take your time. So because your argument to us today is that because they could have decided on unfair advantage and that would be okay, that we, we can assume that they did decide on that and that they didn't rely on the harm, which may or may not be okay. Is that correct? Um, I'm sorry. Is that your argument? Yeah. If I could give you, uh, Garcia v. City of Houston and, uh, citing Hilkin v. Sumrall, Fifth Circuit cases, I can provide you with, with the sites. I have them here. Um. Do we have any indication that when they, oh, I thought you just said he could provide them. I apologize. Were you giving them now? I thought. I'll be, I'll be happy to give them now. I thought you said you were going to provide them. I'm happy for you to give them now or provide them later. We'll give them at the end of the argument. I don't want to slow this down. What do we know that tells us that text, that, um, that the legislature in Louisiana meant something unique about good faith as opposed to just that it was a violation of law and then it was reasonable, which is a standard definition that's used of good faith in lots of contexts, in whistleblower situations. Well, in the statute, there is, um, there is a separate, an independent requirement of good faith, um, you know, in the common sense application, I don't know how a criminal polluter over three years, uh, I think the jury had a big problem with that in this case and I think that therein lay their focus and in the two interrogatories they answer, I think they were, uh, compelled to answer in the way they did by that evidence. Um, in the first interrogatory referred to the activity at issue, which was the act of my opponent puts a different interpretation on that, um, but on page eight of the jury instructions it refers to activity being the act of harming the environment and the jury found that Eric reasonably believed that what he was doing for three years, um, was in violation of an environmental law. And the next question was, did he make his report in good faith? They said he didn't. Uh, and that was the end of the case. Uh, I don't know that the jury ever got into the niceties of the distinction between, uh, intent to harm versus intent to defraud, uh, and even again in that charge, they didn't, if they did get focused on that, they need not go beyond, uh, the camp, the, the plaintiff's motive, um, uh, to seek an unfair advantage. Um, this, the niceties between, um, the words plaintiff focus on, focuses on and whether that had an impact on the verdict or sheer speculation, Your Honor. Um, the case of Cherami versus, uh, J. Wayne Plaisance was, uh, alluded to, uh, by, by my opponent. Um, I, I would point out that in that case, the plaintiff whistleblower refused to participate in the work he believed violated environmental laws and was consequently fired for it. Uh, in the Overton case, Mr. Overton's report of, of the, of how we set the gauges on the equipment in question was torn up, uh, while he was off duty and a falsified report by a contractor was substituted for it. Um, and later on a second occasion when he was asked to do something, he wasn't sure was violative or, or, or not of the law. He initially did it, but then blew, blew the whistle and, uh, in both cases, uh, Mr. Cherami and Mr. Overton were motivated, uh, clearly to protect the environment. I think that's what the statute is all about. That's not what this case is about. This case is about a man who, by his own admission, dumped oil for three years, uh, didn't, uh, take it to the government, didn't take it to the Louisiana Department of Environmental Quality, but at some point when he was sufficiently disgruntled with his supervisor, uh, he sought to get a better position by reporting his own misdeeds. Uh, there's nothing but bad faith in all of that and, uh, it, it, it, it, it certainly, uh, we would have eliminated . . . The court, the court instructs the jury that under the Whistleblower Act, the employee acts in good faith and the jury can determine what good faith is. I mean, you don't really have to define that. I mean, did he act in good faith? I, I, I would agree and . . . But they did give a definition. Well . . . If they'd have stopped there, you could say there's no, you know, the jury can figure it out and we assume the jury figured it out, but if the jury gives it, but if you give a definition and that definition is objected to, that's why we're here today. Well, part of the definition, a, a small part of the definition was objected to. It, it, and the rest of the definition was not objected to. And, uh, I, I think the more compelling instruction was that, um, the, the act has no, no application to an employee, uh, who dumps oil or, or acts without direction from his supervisor and deliberately commits an environmental violation. I think as soon as the jury got to the interrogatories where they could apply that instruction, they did so. And that's what was so compelling about this case. The, the, the uncontested testimony by this man that, uh, he polluted the environment. Where, where did he try to harm another employee or the employer? Where did he try to harm them? His captain. How did he try to harm him? He was hoping to get him fired. Uh, uh. Where did he say that? How, what, what was the evidence of support? Well, it was. Harmed anybody? It, it was clear, uh, and we cited this in our brief. After he made the report, uh, he, he, he went back and he was giddy. He told his, uh, his colleagues, his coworkers that the captain is in deep trouble now. Uh, somebody from legal was taking notes. Um, and, um, he had a series of email. That's in the record that after he reported the violation, he comes back to his fellow employees and begins talking about how I've really put the captain on the spot now. He's going to have to answer to the big boys or something like that. Yes. In fact, it was in writing. It was in a text or an email. It's one of our exhibits. What did he say precisely about that? I'm sorry, Your Honor. What did he say precisely in that line? He said, uh, uh, the captain is in big trouble now. Looks bad for him. Um, you know, when I said what I said to, to, to Ms. Cherami, the HR manager, um, legal was taking notes, you know. Why, why, why, uh, was he, why was he specifically mad at the captain? Why was he angry with the captain? The, the, the, he didn't get along with the captain. Uh, the captain didn't let him loiter in the wheelhouse. He thought if he could loiter in the wheelhouse instead of doing his work, that, uh, he could get credit towards, uh, a better license. And the captain didn't, wouldn't put up with that. Okay, Mr. Clements. Um. Your time is up, and we will hear from Mr. Landry now. And, and I'll, we'll get you these cites. We'll write them right now. Thank you. I just didn't want to put you on the spot to have to give cites, so. Uh, Your Honors, Mr. Borchig wrote to the company. He tried to inform them. He got no response. When he got no response to trying to inform them of the environmental violations. That he himself had done. That he was ordered to do. He said, or he, he says he was ordered to do it by the captain. He was ordered to do it by the captain and by the wheelman, who was the brother of the captain. And the record is replete, uh, with testimony that this activity was ordered on the vessel. Uh, Mr. Borchig testifies about it at, uh, record page, uh, 2074. Captain LeBlanc testifies that he gave orders to, uh, empty what he said was mostly water. From what was labeled the waste oil tank, which is. Then did the jury decide the case against you on the basis of the email that we've been referring to here. That he showed that he was satisfied with vengeance against the captain in some way. Is that what the jury turned on? What I, what I think happened here is, uh, uh, the company's position evolved over time from discovery. And then we had a trial. All right, your honor. And, uh, there was an email after Mr. Borchig made his report. It's plaintiff's exhibit 11. It's from the number two person in the company, the owner's daughter. Who says we were, we're sorry for the delayed response. I've spoken with personnel. They'll be calling you to discuss switching vessels. We are addressing your other concerns, his report. And I appreciate your honesty. You were, you are correct. You did do the right thing by addressing this. That was then. When we get to trial, uh, what their position was when they argued to the jury to answer your question, judge. In closing argument, defense counsel argues, harming his employer is not a basis for good faith. If he wants to bash Ronnie LeBlanc like he did when he went in to see Tara Sheremy and bash Ronnie LeBlanc or get at Ronnie LeBlanc, that's not a basis for good faith. That would be bad faith. And that was argued throughout the trial. Uh, well, it was argued throughout closing argument once this instruction was going to be given that harm equals bad faith. And I sincerely believe that that is where the jury came off the tracks after finding reasonable belief. Now, I thought that you were also arguing that unfair advantage does not mean something that's apart from falsehood. That just wanting something bad to happen to someone is not malice for unfair advantage. That is correct, Your Honor. Okay, because the opposing counsel says, well, the unfair advantage part is okay. It's just the harm part that's at issue. I thought the whole thing was at issue because you, based upon your objection to the jury charge number eight in writing, where you complained about unfair advantage or harm and said that if you talk about wanting to hurt Ronnie LeBlanc or get him into trouble, that that would not be appropriate evidence of lack of good faith.  So what is the answer? Well, you know, if you're going to instruct on unfair advantage, there should probably be some explanation of what unfair advantage is. Honest belief is honest, subjective belief. I think that's fairly clear. So, yeah, honest belief and no unfair advantage, and that is defined, and we talk about that in our brief, what unfair advantage means under Louisiana law. We get into that. Does it mean that you want something bad to happen to somebody? It does not mean that. It certainly does not mean that, and that's not what the law that talks about malice or unfair advantage talks about. I do want to comment, if I may, regarding Mr. Borchick, you know, this idea that he reported his own violation, that he did this on his own. He was a polluter all this time. He was ordered to do it, and the record is replete. We cite it in the brief. Others were also ordered to drain this waste oil tank through the stuffing box. If your honors will look at photographs, plaintiffs exhibit 83-1, 2, 3, and 4, you can see how they did this down in the bottom of the vessel. My point, though, is that he was ordered to do this, and under the Louisiana Environmental Whistleblower Statute 3027 subpart C, an employee who is not ordered to engage in the activity and engages in it is not protected. By implication, if the employee is ordered to do it, he is protected. Would you settle in this case for an instruction that says this must be done in good faith? And I'm not going to tell you what it means. I mean, good faith is what you ordinarily think of as good faith. If you think the man acted in good faith, you think it. If you think he acted in bad faith, you think it. Just use your everyday common sense as to whether you use good faith or not. Would you settle for that? I think if we're using a legal definition, we need to give that information to the jury so that they can make the decision the law requires. Well, we are using a legal definition in the sense that it is in the context of the statute, I guess. Well, it's just like harm. In Genesis 5020, harm, Joseph talks about you were intended to harm me. Now it works for good. He was left in the bottom of a pit to die. But in this case, harm seems to mean trouble. He was out to get his boss in trouble. So I think if we're going to give him a definition of good faith, we need to give him a little more than good faith. Okay, thank you very much. That completes the oral arguments that we have here.